[S. F. No. 21236. In Bank. Feb. 14, 1963.]

HAIG GARABEDIAN, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; THE PEOPLE, Real Party in Interest.

Garry, Dreyfus & McTernan and Benjamin Dreyfus for Petitioner.

No appearance for Respondent.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Real Party in Interest.

McCOMB, J.—Petitioner seeks a writ of prohibition commanding the Superior Court of the City and County of San Francisco to dismiss an information charging him with a violation of section 20001 of the Vehicle Code.

Section 20001 of the Vehicle Code reads: "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004, and any person failing to stop or to comply with the requirements under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both."

At the time of his arraignment petitioner moved to have the information set aside on the ground that he had been held to answer without reasonable or probable cause. The trial court denied the motion.

The question for us to determine is *whether there was any evidence, direct or indirect, at the preliminary hearing, of an essential element or ingredient of the offense charged, to-wit, whether petitioner knew he had had an automobile. accident.*

This question must be answered in the negative. John Ratto testified that he was working on Market Street in front of Manning's Coffee Shop about 2:30 in the morning of July. 27, 1962. The witness was on the north side of Market Street, west of the Montgomery Street intersection. He heard a noise or thud, turned, and saw a man lying on the street next to a westbound automobile. He identified the car as a 1952 or 1953 dark green Buick. He did not see the vehicle strike the pedestrian.

The pedestrian was injured. The witness saw a part of

the license number of the vehicle and told it to a taxi driver, who wrote it down for him. He thereafter gave it to the police or to the ambulance driver.

Officer Lindgren, of the Accident Investigation Bureau of the San Francisco Police Department, testified that he obtained from Mr. Ratto three letters and two digits of the license number of the Buick. He reported this information to his headquarters and was subsequently given petitioner's name and address.

About 5:30 o'clock the same morning, the officer called on petitioner, having first telephoned him. The officer ascertained from petitioner that he owned a 1954 green Buick, which the officer inspected. There was no damage to the vehicle, although there were brush marks on the left front and on the bumper on the left side.

Petitioner anwered questions freely. He told Officer Lindgren that he had been in San Jose and had returned home, he thought, about 3 o'clock in the morning; that no one else had driven his car; that he had been violently ill during the course of the evening; that he did not know he had been involved in an accident; and that he did not know whether he had been on Market Street at the time of the accident.

Officer Kennedy, of the San Francisco Police Department, testified that he and his partner had been on patrol in the downtown financial area on the evening in question and saw petitioner about 2:30 in the morning parked on Bush Street about 100 feet west of the intersection of Bush and Montgomery Streets, headed toward Kearny Street (the wrong way, since Bush Street is one-way eastbound). He said that petitioner had been violently ill, throwing up, and that petitioner was "deathly sick, his face was white, and he had vomitus about him and his clothing." The officers determined that petitioner ". . . wasn't drunk . . ." and sent him on his way. Petitioner made a U-turn on Bush Street, drove east to Montgomery Street, and turned toward Market Street.

The alleged accident occurred on Market Street just west of Montgomery Street, obviously within a few minutes of petitioner's encounter with Officer Kennedy.

■▌ Although the prosecution is not put to proof beyond a reasonable doubt in order to establish reasonable and probable cause before the magistrate, nevertheless the burden is on the prosecution to produce evidence that there is a

reasonable probability, enough to induce a strong suspicion in the mind of a man of ordinary caution or prudence, that a crime has been committed, and that defendant is guilty. (*Rogers* v. *Superior Court,* 46 Cal.2d 3, 7 [5] [291 P.2d 929]; *Lorenson* v. *Superior Court,* 35 Cal.2d 49, 57 [4] [216 P.2d 859].)

From the record, it appears that there was no evidence of an essential element of the crime with which petitioner was charged, to-wit, knowledge on his part that an accident had occurred resulting in injury to another. (*People* v. *Kuhn,* 139 Cal.App.2d 109, 112 [4] et seq. [292 P.2d 964]; *People* v. *Rallo,* 119 Cal.App. 393, 398 [3] et seq. [6 P.2d 516]; *People* v. *Leutholtz,* 102 Cal.App. 493, 497 [3] [283 P. 292].)

The transcript of the preliminary hearing discloses no evidence tending to show that petitioner knew his car had been involved in an accident, if indeed it was, or that another person had been injured.

The pedestrian appears from the evidence to have been seriously hurt. Lying on the pavement, he had blood coming out of his forehead, one eye was closed, and he complained of inability to move his arm. He was apparently removed by ambulance.

There was, however, none of the damage to petitioner's car that might reasonably be expected had it caused such injuries. His car had no more than the indicated brush marks; no paint had been removed or scratched, and there were no dents or indentations of any kind. Obviously, the brush marks where the dust was cleared could have been caused in a variety of ways other than by the accident.

All the evidence is to the effect that petitioner knew nothing of the accident or of his suspected involvement until the arresting officer told him about it at 5:30 in the morning, three hours later. Officer Lindgren testified: "Q. . . . You asked Mr. Garabedian if he had been in an accident, did you not? A. I did. Q. He told you that he knew of no accident he'd been in, isn't that true? A. That is correct."

Let a writ of prohibition issue as prayed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.