[Crim. No. 12672.   Second Dist., Div. Five.   Aug. 28, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST WILLIAMS, Defendant and Appellant.

Mary Ellen Pangonis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

THE COURT.—The defendant was charged by information, in count I thereof with grand theft, a felony (Pen. Code, § 487, subd. 1), and in count II thereof with receiving stolen property (Pen. Code, § 496, subd. 1). Both counts of the information rested upon the theft of a calculating machine and its subsequent disposition. The information also charged the defendant with having suffered a prior conviction of violation of section 503 [now section 10851] of the Vehicle Code,

a felony, on December 31, 1957, and with having served a term of imprisonment therefor in state prison. The defendant entered a plea of not guilty and denied the truth of the allegations of the prior conviction. A jury trial was waived, and after trial by the court sitting without a jury, he was adjudged not guilty as to count I of the information and guilty as to count II thereof. The allegations of prior conviction of felony were found to be true. Upon the hearing therefor, the motion for a new trial was denied, probation was denied, and the defendant was sentenced to state prison. The appeal is from the judgment of conviction.

## The Facts

On September 28, 1965, the Active Sales Company, Inc., whose office was situated at No. 1518 East 15th Street in the City of Los Angeles, was the owner of a Victor calculating machine, which was used by its employees in connection with its business. Robert Kincart, the assistant manager more or less and purchasing agent for the company, had last used the machine at about 3 p.m. on the above date. At 5 p.m., when he locked the premises to go home, he discovered that the machine was missing. He did not know the defendant and he had not given anyone permission to enter the premises of his employer and take the machine.

The calculating machine was on the desk of the bookkeeper in the main office. From this location there was a door to the public sidewalk available to business invitees and employees of the company. Mr. Kincart next saw the machine at the Newton Street police station after he was notified by the police to come and claim it, approximately a month after it was stolen, which he did.

On or about October 22, 1965, Robert L. Smith, a police officer for the City of Los Angeles, visited a pawn shop known as Tony's Loan, situated in county territory at 8913 South Vermont Avenue. He was possessed at this time with information concerning the theft of the Victor calculating machine from the premises of "Active." He obtained a copy of the "buy sheet" showing that the Victor calculating machine had been pawned at Tony's Loan on September 28, 1965. He then talked to the defendant concerning the theft of the machine and its subsequent hypothecation. Before talking to the defendant he advised him of his right to an attorney, of his right to remain silent, and that anything he said could be used against him later in court. The defendant's statements were freely and voluntarily made.

Officer Smith asked the defendant if he remembered having pawned a Victor calculator at Tony's Loan company on September 28, 1965, to which he replied that he did not. Officer Smith asked him if he remembered pawning or selling a calculating machine to any pawn shop, and he replied that he did not. At this juncture Officer Smith produced a copy of the pawn shop "buy certificate" containing a fingerprint and bearing the signature of "William Ernest," which he showed to the defendant. He told the defendant that the fingerprint contained on the document had been examined and compared with a fingerprint of the defendant on file with the police department and that such examination and comparison disclosed that the prints were made by one and the same person. He told the defendant further that "[n]obody is going to believe your story that you never pawned the machine. What is the truth?" Officer Smith testified that the defendant then stated, "Well, I will tell you the truth, that on September 28, 1965, I was driving on Western Boulevard and when I approached Santa Barbara I saw a friend of mine standing on the corner and he waved at me . . . [I] pulled over to the curb and this friend got in to [my] car and this friend had in his possession the calculator. The friend asked [me] if [I] would take it to a pawn shop to pawn this item and [I] took this fellow to Tony's Loan company at 8913 South Vermont." When asked who his friend was, the defendant told Smith that he did not remember his name, but he was a good friend of his. When Smith asked what had occurred at the pawn shop, he replied that "his friend said he didn't have any identification on him and asked the defendant to pawn it for him and the defendant said he did take the machine into the shop and he did sell the machine to Tony's Loan Company" and that "[h]e received $30 for the machine."

There was evidence that the calculator had cost $435, exclusive of excise and sales taxes, at the time of its purchase in 1960, and that at the time of its theft it had an insured value of $275. Tony's Loan company sold the machine to a wholesaler for $125. The records of Tony's Loan company, made available to Officer Smith at the time of his investigation, indicated that on October 10, 1965, the defendant had returned to the pawn shop and had received an additional sum of $15 on the transaction. The owner of Tony's Loan company, Joe Soto, was present on September 28, 1965, when the loan was initially made. Although he was unable to identify the defendant in the courtroom because of the

numerous people who visited his shop, he nevertheless recalled the transaction in which the machine was given in a "buy-back" for $30. He was also present when someone returned with a pawn ticket and was given an additional $15, which resulted in the attempted transfer of ownership of the machine to Soto. He was certain that the person to whom $30 was given on September 28 was the same person to whom he gave $15 several days later. At the time the calculator was first brought to the pawn shop, no one came into the shop who lacked proper identification, left, then returned with someone else who had identification. Only one individual came into the shop and pawned the machine.

At the time the calculator was pawned, a report was made out on a form entitled "County of Los Angeles Sheriff's Department." Identification based upon a driver's license or a social security number was taken as well as a fingerprint of the individual, and all such information as well as the print was placed upon the report. The defendant's fingerprints on an exemplar card were examined and compared by a duly qualified expert with the fingerprint on the sheriff's department report form, and such prints were found to have been made by one and the same person.

The defendant testified that he and his wife were driving south on Vermont Avenue when a friend by the name of Wilson hailed him at a stop sign. Wilson asked him to drive him to a pawn shop and offered to purchase some gas in exchange for this favor. The defendant then drove Wilson to Tony's Loan. Upon reaching Tony's Loan, Wilson went in, telling the defendant that he would be right back. Wilson was carrying an adding machine in a bag. Wilson returned shortly and stated, "I don't have any I.D." and asked the defendant to get a loan for him and if he did so, that he could have $5. He testified that the adding machine was still in the pawn shop when Wilson came out and that he then went into the shop, signed the ticket, and showed Mrs. Soto his driver's license, then placed his fingerprint on the ticket. He claimed that upon receiving the pawn tickets, he signed them and delivered them to Wilson. He denied having given Wilson his driver's license or any other means of identification. He never returned to the pawn shop after this visit and denied having received any money other than the $30 given to him on September 28, 1965. He recalled his conversation with Officer Smith as follows: "Q. And what, if anything, did you tell him when he asked you about if you had pawned an adding

machine on the 28th of September? A. He asked me did I recall pawning a calculator and I told him I didn't know. I told him I didn't know a calculator from an adding machine, they both were the same. Q. You didn't know they were both the same? A. I didn't know they both were. I thought a calculator meant an adding machine; that is why I told him I didn't know." He denied knowledge that the machine had been stolen.

The defendant's wife testified in his behalf, and her testimony generally corroborated the defendant's story about having met Wilson and the subsequent trip to the pawn shop. She remained in the car outside of the pawn shop and knew nothing of what transpired inside the pawn shop.

### The Contentions

The defendant sets forth four assignments of error as follows:

A. The evidence is insufficient to convict the defendant of receiving stolen property.

B. The evidence is insufficient to establish the fact that the calculator was stolen.

C. Recent possession of stolen property, with attending suspicious circumstances, is evidence of larceny and not evidence of receiving stolen property without evidence that such property was stolen by someone other than the person accused of receiving it.

D. A thief may not be convicted under Penal Code section 496 of "receiving" the goods which he has previously stolen.

■ The elements of the crime of receiving stolen property are: (1) that the property found in the possession of the accused was acquired by theft or extortion; (2) that defendant received, concealed, or withheld the property from the owner; (3) that the defendant knew the property was stolen. (*People* v. *Azevedo* (1963) 218 Cal.App.2d 483 at p. 490 [32 Cal.Rptr. 748]; *People* v. *Bartfeld* (1962) 204 Cal.App.2d 701, 705 [22 Cal.Rptr. 618].) ■ Defendant's claim that the evidence was insufficient to sustain an implied finding that the calculator was stolen is without merit. Robert Kincart, the assistant manager more or less and purchasing agent of Active Sales Company, Inc., testified that the calculator was purchased by the company in 1960. He last used the calculator on September 28, 1965, at about 3 p.m. At 5 p.m. when he locked the business to go home he noticed that the calculator

was missing. He had given no one permission to take the machine. The conclusion by the trial court that Kincart was in control of the machine was also supported by testimony that it was he who reclaimed it from the police department on behalf of the business. Kincart's testimony, together with the inferences which properly can be drawn from it, sufficiently establishes theft of the calculator. (*People* v. *Fiore* (1959) 176 Cal.App.2d 536, 539 [1 Cal.Rptr. 351]; *cf. People* v. *Smith* (1956) 145 Cal.App.2d 149, 150 [302 P.2d 63].)

The question then is whether there is sufficient evidence to sustain the finding that the defendant knew that the calculating machine had been stolen. ■ It is well established that evasive answers by a defendant to material questions with reference to the ownership of stolen property, or to the manner in which the defendant claims to have acquired such property, or, as is generally stated, a failure on the part of the defendant to satisfactorily explain his possession, may be sufficient upon which to base an inference of guilty knowledge. ■ What constitutes a satisfactory explanation of possession is a question to be answered by the trier of fact. (*People* v. *Juehling* (1935) 10 Cal.App.2d 527, 532 and 533 [52 P.2d 520].) The explanation of the defendant as to how he came into possession of the calculating machine is, to say the least, unsatisfactory. In the absence of a satisfactory explanation, an inference of guilty knowledge was warranted. (*People* v. *Siegfried* (1967) 249 Cal.App.2d 489, 493 [57 Cal.Rptr. 423]; *People* v. *Giffis* (1963) 218 Cal.App.2d 53, 58-59 [32 Cal.Rptr. 215].)

The defendant's argument that there is an obligation by the state to prove as a necessary element of the crime of receiving stolen property that the original theft of the goods was by someone other than the defendant stems from a misreading of *People* v. *Jacobs* (1925) 73 Cal.App. 334 [238 P. 770]. ■ The correct rule is that where it is affirmatively established that the defendant *is* the thief, he may not be convicted under subdivision 1 of section 496 of the Penal Code if the concealment and withholding of the stolen goods have been a part of his activities connected with the theft. (*People* v. *Tatum* (1962) 209 Cal.App.2d 179 [25 Cal.Rptr. 832].) However, such section does not require proof that the defendant was not the thief as a necessary element of the crime. (*People* v. *Marquez* (1965) 237 Cal.App.2d 627, 634, 637 [47 Cal.Rptr. 166]; *People* v. *Hansard* (1966) 245 Cal.App.2d 691, 696 [53 Cal.Rptr. 918].) ■ While, generally, a thief may not be convicted under the above sec-

tion of "buying" or "receiving" the goods he has previously stolen, he may be adjudged guilty of violating that section by reason of concealing or withholding such property following his theft, where the theft has been completed and the facts indicate a "complete divorcement" between a second concealment and the initial concealment after the theft. (*People* v. *Tatum, supra,* 209 Cal.App.2d at p. 184.)

The judgment is affirmed.