[L. A. No. 29623. In Bank. Oct. 3, 1969.]

CLETIS U. WILLIAMS. Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Robert G. Leff for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

SULLIVAN, J. — Defendant Cletis U. Williams was charged by information with one count of grand theft of an automobile (Pen. Code, § 487, subd. 3) and one count of receiving stolen property (Pen. Code, § 496). His motion to set aside the information for lack of reasonable or probable cause (Pen. Code, § 995) was denied, and he here seeks a writ of prohibition to restrain further proceedings in the superior court (Pen. Code, § 999a).

At the preliminary examination James M. Tom testified that on March 12, 1968, his "customized" 1956 Chevrolet was stolen from a college parking lot; that the car was recovered on the next day stripped of its customized accessories; that some eight weeks later he saw another 1956 Chevrolet automobile, parked near his place of employment, upon which there was "practically everything" that had been taken from his automobile. This included four "special order" tires, four chrome wheels manufactured to Tom's specifications, front and rear seats designed by Tom and made to his order, custom-made front and rear rugs, a "shift boot" modified by Tom himself for use in his car, a four-speed "cross ratio" transmission, distinctive chrome window mouldings, a chrome ashtray cover and a glove compartment door which had been custom chromed and upon which the name "Gloria" had been etched.

Tom further testified that, upon observing the car in question, he immediately called the police and then accompanied them to the place where the car was parked. As they approached the car defendant entered it and began to drive away. The police stopped defendant, arrested him, and seized the car.

The prosecution adduced no evidence of statements or conduct on the part of defendant or other circumstances which would tend to show that he had come into possession of Tom's accessories by criminal means or that he knew that the accessories were stolen. Defendant argued before the magistrate that he could not be held to answer in the absence of such evidence. The magistrate disagreed: "I am holding the Defendant to answer. . . . Maybe there were other seat covers like this; maybe there are other wheels like this; maybe there are other tires like this; maybe there are other glove [compartment] covers like this, *but were they all on the same car?* There

is enough to hold him, and the fact that *all of the articles* were in his presence a short time after the car was stolen, two months, but it does take time to mount these things; and maybe he does have a defense, but for the purpose of this hearing it is satisfactory." (Italics added.)

 Section 872 of the Penal Code provides in substance that if it appears from the preliminary examination that a public offense has been committed, "and there is sufficient cause to believe the defendant guilty thereof," the magistrate must make an order holding him to answer. "Sufficient cause" within the meaning of section 872 is generally equivalent to that "reasonable or probable cause" required to justify an arrest. (See *People* v. *Green* (1969) 70 Cal.2d 654, 663, fn. 7 [75 Cal.Rptr. 782, 451 P.2d 422]; *Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]; *People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344].) " 'Sufficient cause' and 'reasonable and probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused (*People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344] . . . ." (*Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7-8 [291 P.2d 929].)

 When the evidence produced at the preliminary examination does not meet this test, the order holding a defendant to answer should be set aside on motion pursuant to section 995 of the Penal Code,[1] and if this is not done the trial will be prevented by a writ of prohibition issued under section 999a of the Penal Code.[2]

 It is clear, however, that evidence which will justify prosecution under the above test need not be sufficient to support a conviction. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 56 [216 P.2d 859]; see *People* v. *Nagle*, *supra*, 25 Cal.2d 216, 222.) "An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming

[1]Section 995 provides in relevant substance that an information must be set aside by the arraigning court upon defendant's motion if it appears "[t]hat the defendant had been committed without reasonable or probable cause."

[2]Section 999a sets forth procedural requirements relative to "A petition for a writ of prohibition predicated upon the ground . . . that the defendant had been committed on an information without reasonable or probable cause, . . ."

1148

the possibility that an offense has been committed and the accused is guilty of it. [Citations.] [ ¶ ] ▆ A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, if there is some evidence to support the information, the court will not inquire into its sufficiency. [Citations.] Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. [Citations.] " (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474.) ▆ Finally, although there must be *some* showing as to the existence of each element of the charged crime (see *Garabedian* v. *Superior Court* (1963) 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590]) such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate. (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474-475.)

In the instant petition for a writ of prohibition defendant contends (1) that he was committed without reasonable or probable cause as to the charge of grand theft of an automobile (Pen. Code, § 487, subd. 3), because there was no testimony that he had been seen *taking* the Tom car, and there was no testimony as to defendant's *intent* at the time of the alleged taking;[3] and (2) that he was committed without reasonable or probable cause as to the charge of receiving stolen property (Pen. Code, § 496) because there was no testimony indicating that the circumstances warranted an inference that he had *knowledge* that the property was stolen.[4] ▆ However, the summary of applicable law which we have set forth above, makes it clear that an information will not be set aside merely because each element of the charged crime is not established by direct testimony. Rather, the inquiry is whether the evidence presented at the preliminary examination discloses circumstances from which the magistrate might reasonably

[3]The petition alleges: "There was not sufficient probable cause to hold the petitioner to answer a count of grand theft in that there was no testimony presented by anyone that petitioner had been seen taking the said automobile, carrying or driving the automobile away, or, that the defendant had taken Tom's automobile with the intent to take it permanently, said elements being part of the corpus delicti of the crime of grand theft of an automobile."

[4]The petition alleges: "There was not sufficient probable cause to require petitioner to answer a count of receiving stolen property, in that the most that could be said was that defendant was in possession of allegedly stolen property, without any effort to offer testimony that the circumstances demonstrated an inference of guilt, or knowledge, that the alleged property was stolen within the elements necessary to establish a corpus delicti for receiving stolen property."

have inferred the existence of each element of the charged crime.

The evidence produced at the preliminary examination clearly shows that on March 12, 1968, Tom's car was stolen from him by *someone*—i.e. that *some person* took his car from him without his consent or under a claim of right and with the specific intent to deprive him of it wholly and permanently. (See *People* v. *Walther* (1968) 263 Cal.App.2d 310, 316 [69 Cal.Rptr. 434].) The narrow question before us is whether that evidence also discloses circumstances from which the magistrate could reasonably have inferred that *defendant* was the thief or, in the alternative,[5] that he received portions of the subject property knowing that the same were stolen. The resolution of this question depends upon the legal significance to be given that evidence presented before the magistrate to the effect that defendant, some eight weeks after the theft, *possessed* "practically everything" that had been stripped from the Tom car subsequent to the theft.

■ It has long been settled in this state that evidence of mere possession of stolen property is not sufficient in and of itself to *sustain a conviction* for grand theft (*People* v. *Wissenfeld* (1951) 36 Cal.2d 758, 763 [227 P.2d 833]; see *People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *cf.* *People* v. *Citrino* (1956) 46 Cal.2d 284, 288 [294 P.2d 32]; *People* v. *Boxer* (1902) 137 Cal. 562, 563-564 [70 P. 671]), or for receiving stolen property (*People* v. *Lyons* (1958) 50 Cal.2d 245, 258 [324 P.2d 556]), and that the conviction will not be sustained unless there is, in addition to evidence of possession, some evidence worthy of consideration tending to show that such possession was obtained by unlawful means. Defendant, relying on this proposition, contends that there is no such additional evidence—circumstantial or otherwise—in the instant case, and that therefore there was no "sufficient cause" under section 872 of the Penal Code to *hold him to answer.*

---

[5] In the absence of a conspiracy between the thief and the receiver of stolen goods (see *People* v. *Lima* (1944) 25 Cal.2d 573, 576-577 [154 P.2d 698]), a defendant cannot normally be *convicted* for both stealing and receiving the same goods. (See *People* v. *Tatum* (1962) 209 Cal.App.2d 179, 183-184 [25 Cal.Rptr. 832]; cf. *People* v. *Marquez* (1965) 237 Cal.App.2d 627, 634, 637 [47 Cal.Rptr. 166]; *People* v. *Williams* (1967) 253 Cal.App.2d 952, 958-959 [61 Cal.Rptr. 238].) He may, however, be *charged* with both crimes if there is "sufficient cause" to believe him guilty of each. (*People* v. *Tatum, supra,* 209 Cal.App.2d 179, 184.)

1150

 ·We do not agree. The evidence to support an indictment or information need .not be sufficient to support a conviction (*People* v. *Castiel* (1957) 153 Cal.App.2d 653, 659 [315 P.2d 79]) and accordingly to "warrant the denial of a motion under section 995 of the Penal Code, it is not necessary that the proof be so complete as to justify a conviction of the accused." (*People* v. *Rissman* (1956) 143 Cal.App.2d 488, 494 [299 P.2d 944].) Assuming for the sake of argument that the evidence here presented before the magistrate would not support a conviction for either of the charged crimes, we conclude that such evidence was nevertheless sufficient to hold defendant to answer.

In reaching this conclusion we consider it highly significant that defendant was found in possession of *all or practically all* of the accessories which were stripped from Tom's car after it was stolen. This factor distinguishes this case from one in which, for instance, the stolen property was a single object. Wheareas it might perhaps be argued in the latter case that the mere fact of possession affords less·than significant support for an inference that the possessor was the thief or had received it with guilty knowledge,[6] the situation is otherwise in a case such as that at bench where substantially all of several items stolen at the same time and place are found in possession of the defendant. Although it is arguable that the accused innocently came into possession of all of the items at one time as a "package," so to speak, clearly the simultaneous possession by one person of the functionally unrelated items here involved, all of which were stolen at the same time, gives rise to a reasonable inference that the possessor is either the thief or one who received the property from the thief "knowing the same to be . . . stolen."[7] (Pen. Code, § 496.) The simultaneous presence of all or substantially all items taken in a single larcenous act tends to indicate that they have not yet been diffused within the stream of commerce; thus, it can be reasonably inferred that the possessor is either identical

[6]The matter of *time* is always relevant to the magistrate's decision. An inference of guilt, otherwise reasonable, may be weakened beyond the point of reasonableness if it appears that the period between theft and discovered possession was inordinately long under the circumstances.

[7]In drawing this inference of guilty knowledge the magistrate would have been warranted in reasoning on the basis of his knowledge of practical realities that one who receives from another individual a collection of diverse automotive accessories such as those here involved (which included items ranging from a transmission and tires to window mouldings and an etched glove compartment cover) does so with an awareness that they might well have been obtained by stripping a stolen car.

with or knowingly stands in close proximity with the thief. In short, absent such close involvement of the possessor one finds it difficult to infer that "practically everything" stolen from one Chevrolet would normally be found incorporated in another Chevrolet of the same year within a relatively short time thereafter.

We have quoted above the magistrate's ruling upon holding defendant to answer. It is there made clear that the magistrate, in making reference to the fact that all or practically all of the accessories taken from Tom's car were found in defendant's possession, concluded that that fact permitted the inference that defendant either was the thief of Tom's car or had received the accessories therefrom with knowledge that they had been stolen. Moreover, the magistrate observed that the period of time which elapsed between the theft and the discovery of the accessories was not so long, in view of all of the circumstances, that the inference was weakened. (See fn. 6, ante.) These determinations were sound. It therefore appears that there was sufficient cause within the meaning of section 872 of the Penal Code to hold defendant for trial, and the information must therefore be sustained.

The petition for a writ of prohibition is denied. The alternative writ is discharged.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

PETERS, J. —I dissent. The writ of prohibition should issue.

The purpose of a preliminary hearing before a magistrate is to "weed out groundless or unsupported charges .. and ... relieve the accused of the degradation and the expense of a criminal trial." (*Jaffe* v. *Stone*, 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].) The hearing is "designed to protect the rights of the accused and to see to it that no one is detained in custody indefinitely or capriciously in order that a case may be developed in the future, or circumstances arise that will justify a trial." (*People* v. *Bucher,* 175 Cal.App.2d 343, 346 [346 P.2d 202].)

Although every legitimate inference must be drawn in favor of the information (*Rideout* v. *Superior Court*, 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]), there must be some evidence from which the committing magistrate can *reasonably* infer the existence of *each essential element* of the

crime charged. (*Rideout* v. *Superior Court, supra,* at pp. 474-475; *Garabedian* v. *Superior Court,* 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590].)

To establish grand theft of an automobile, the state must prove (1) the taking away of an automobile (2) from the owner (3) into the possession of the accused (4) without the consent of the owner or under claim of right (5) with the specific intent to deprive the owner of his property wholly and permanently. (Compare Pen. Code, § 487, subd. 3, with *People* v. *Walther,* 263 Cal.App.2d 310, 316 [69 Cal.Rptr. 434].)

To establish the crime of receiving stolen property, the state must prove (1) that the property found in the possession of the accused was acquired by theft or extortion; (2) that the accused received, concealed, or withheld the property from its owner; and (3) that the accused knew the property was stolen. (Pen. Code, § 496; *People* v. *Williams,* 253 Cal.App.2d 952, 957 [61 Cal.Rptr. 238].) These elements were not proved here.

It is settled that evidence of possession of recently stolen goods is insufficient to sustain a *conviction* for theft, burglary, or receiving stolen property. There must be, in addition, evidence in the form of suspicious circumstances or statements or conduct of the defendant tending to show his guilt. (E.g., *People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *Citrino,* 46 Cal.2d 284, 288 [294 P.2d 32]; *People* v. *Wissenfeld,* 36 Cal.2d 758, 763 [227 P.2d 833].)

The question presented in the instant case is: If mere evidence of possession of recently stolen goods coupled with a defendant's failure to explain possession will not support a *conviction* for theft, burglary, or receiving stolen property, will it nonetheless support an order of *commitment for prosecution* under section 872 of the Penal Code?

The answer must be no; the mere fact of possession of recently stolen property does *not* provide the basis for a reasonable inference either that the possessor was the one who stole the property or that the possessor knew that it had been stolen, and thus cannot be sufficient to support a conviction (e.g., *People* v. *Wissenfeld, supra,* 36 Cal.2d 758, 763) *or to hold a defendant to answer.*

Were the rule otherwise, any person purchasing or receiving as a gift a chattel, whether new or used, could be held for trial if the chattel turned out to have been recently stolen.

Even persons seeking to explain their possession as legal might be held since the magistrate need not believe their explanation. And the reviewing court is obliged to view the evidence presented in the light most favorable to the validity of the information and to draw every legitimate inference from the evidence in favor of the information. (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474.) Only if the explanation established legality of possession as a matter of law would the magistrate be prevented from disregarding it. Allowing authorities to hold all persons for trial who are found to be in possession of recently stolen goods would impose an undue burden on many innocent purchasers and donees, a burden of the sort which the preliminary hearing is designed to obviate. (*Jaffe* v. *Stone, supra,* 18 Cal.2d 146, 150; *People* v. *Bucher, supra,* 175 Cal.App.2d 343, 346.)

The majority do not contest this point. They do *not* rely on the mere fact of possession of recently stolen property to provide the basis for holding petitioner to answer, but admit that in a case of mere possession of a stolen item, without more, "perhaps . . . the mere fact of possession affords less than significant support for an inference that the possessor was the thief or had received it with guilty knowledge, . . ."

In the present case the majority purport to find the corroborative evidence needed in addition to evidence of possession of recently stolen property in order to convict or to hold defendant to answer. For such corroborative evidence, the majority rely on what they consider to be the "highly significant" fact that "defendant was found in possession of *all or practically all* of the accessories which were stripped from Tom's car. . . ."

I disagree with the majority's conclusion that it is "difficult to infer that 'practically everything' stolen from one Chevrolet would normally be found incorporated in another Chevrolet of the same year within a relatively short time [eight weeks] thereafter." The fact that petitioner was apparently found in possession of "practically everything" that had been "stripped" from the stolen car, approximately eight customized items, reasonably suggests at most that petitioner obtained the customized accessories as a "package deal" for his car, which was the same type of car (1956 Chevrolet) as that from which the accessories were "stripped." It is probably as "normal"—or even more so—for customized accessories to be sold in "packages" as singly.

I cannot agree with the majority's characterization of the stolen items found in petitioner's car as "functionally unrelated." That characterization flies in the face of the facts of this case. The items stolen were "customized accessories" for a car 12 years old at the time of its theft, a 1956 Chevrolet. When those stolen items were recovered eight weeks later, they were found on another 12-year-old car, again a 1956 Chevrolet. There is no showing that the "customized accessories" were suitable for use on other automobile models without substantial modification.

We are not here dealing with functionally unrelated items like a watch, an umbrella, and a car. We are dealing with items which can be expected to be sold as often in packages as singly because they are of utility only to a small part of the populace and a purchaser of one would be expected to be interested in the others. In the present case the items are so closely related and it is so normal for them to be sold as a "package" rather than singly, that it is unreasonable to infer that a person in possession of the "package" eight weeks after the theft is either the thief or a knowing receiver of the stolen property.

I consider that the majority's reasoning in footnote 7 reaches a conclusion based on so-called "knowledge of practical realities" by magistrates which is not only erroneous but is slanderous to many of the citizens of this state. The footnote reads: "In drawing this inference of guilty knowledge the magistrate would have been warranted in reasoning on the basis of his knowledge of practical realities that one who receives from another individual a collection of diverse automotive accessories such as those here involved (which included items ranging from a transmission and tires to window mouldings and an etched glove compartment cover) does so with an awareness that they might well have been obtained by stripping a stolen car."

At the outset I cannot agree with the thought implicit in this footnote that a magistrate has knowledge of the "practical realities" of the practices of trade in customized automobile accessories. I know many justices and judges in this state; none of them are "hot rodders," and on the basis of my own associations, I would guess that there are not more than one or two judges or justices in the entire State of California, if any, who have engaged in or who have expert knowledge of the practices of trade as to customized accessories. There is nothing in the record to indicate that the

magistrate had such expertise. Nor do I believe that the justices or judges of this state are experts as to the trade practices involving automotive accessories generally. Thus, the majority and the magistrate can only guess as to what are the "practical realities." Although I am against indulging in such guesses, if forced to, I would guess that there is a substantial trade among private individuals in automotive accessories, including customized accessories, that the great majority of the transactions are entirely innocent, and that most buyers do not believe that the purchased objects were obtained by stripping a stolen car.

Although many people when their cars fail to function properly and repairs involve unreasonable costs will sell the cars to wreckers, there are also many who will salvage and seek to sell the usable parts, particularly where they are expensive customized parts. Ordinarily, they will be at least as willing to sell them in a package as individually. I see no reason to believe that the unfortunate victim of an accident, for example, who tries to salvage the useful parts of his car will limit his customers to the purchase of a single part; if he has found a potential buyer who owns the proper make and model of car, he will attempt to sell him all of the accessories.

It is apparent from the want ad section of local newspapers that there is a substantial market in private sales of used automobile parts where the seller advertises "parts," generally without specification of the names of the parts but with specification of a year and model car. Depending upon prices, I should think that the sellers would want to sell all of their parts to any owner of the same model and year car. Likewise an owner in the market for such items would be likely to buy many of them from a single seller because it would be difficult for him to find used accessories for this particular year and model.[1]

The footnote states that anyone buying a package of accessories from such sellers does so "with an awareness that they might well have been obtained by stripping a stolen car." I have never had occasion to purchase accessories from a private person, but I would not be so intolerant as to characterize those who sell packages of car accessories as probable thieves;

---

[1] It might also be pointed out that a seller having found a buyer for several of the accessories at a reasonable price would recognize that his market is limited and would be prone to "throw in" the remaining accessories to close the deal.

nor do I believe that those buying the accessories believe that the accessories are probably stolen.

Moreover, even assuming as the majority in effect asserts that common experience showed that sellers of several customized accessories were more often than not sellers of stolen goods, this fact would not warrant holding that mere possession of recently stolen accessories is sufficient to hold a defendant to answer for theft and knowingly receiving stolen goods. The basic rule that mere possession of recently stolen goods is not sufficient to convict of such crimes was not based upon possibilities reflected by common experience but upon a policy fundamental to our democracy and judicial system, which is as relevant to our society today as it was in 1861 when we adopted the rule.

In the landmark case of *People* v. *Chambers* (1861) 18 Cal. 382, 383-384, the court stated: "It is well settled that the possession of the fruits of a crime is a circumstance to be considered in determining the guilt of the possessor, but the authorities seem to hold that this circumstance is not of itself sufficient to authorize a conviction. 'The real criminal,' says Greenleaf, 'may have artfully placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight, and found by the possessor, or have been taken from him in order to restore it to the true owner, or otherwise have come lawfully into his possession.' (3 Greenl. Ev. sec. 31.) *Our sense of justice would revolt at the idea of convicting a person under such circumstances; but it is obvious that if the mere possession is sufficient to convict, the innocent are as likely to suffer as the guilty. There are many cases in which an explanation would be impossible; and in such cases to throw the burden of explanation upon the accused would be to slam the door of justice in his face.*" (Italics added.) The court went on to state that the circumstances needed in addition to possession to secure a conviction "must be such as are naturally calculated to awaken suspicion against the party charged, and to corroborate the inference of guilty possession."

It bears emphasis that the court in *Chambers* did not dispute that possession of recently stolen goods gives rise to an inference of guilt; the court assumed it did, but it in effect held that, even assuming the existence of the inference, the inference should not be indulged because, in the light of the difficulty in disproving guilt, conviction on the basis of the infer-

ence alone would mean that "the innocent are as likely' to suffer as the guilty."

These considerations are applicable here. The majority has determined that from the possession an inference of guilt may be drawn. How may the defendant meet the inference? Under the majority view, he may not rebut the inference by producing a cancelled check, bill of sale, or witnesses to the purchase. The majority state in footnote 7 that the magistrate may still infer, even when there is a sale, that the defendant was aware that these were probably stolen goods. Ordinarily, it would seem that he can rebut the inference of guilty knowledge only through his own testimony.[2] But the guilty purchaser may proclaim lack of knowledge as loudly as the innocent purchaser, and in the words of *Chambers* "the innocent are as likely to suffer as the guilty." We should not permit the inference of guilty knowledge to be indulged, unless, again in the words of *Chambers,* there is, in addition to the possession, proof of circumstances "naturally calculated to awaken suspicion against the party charged, and to corroborate the inference of guilty possession."

I must also point out that the implications of today's majority opinion will probably have grave practical effects upon our economic life. If an inference of guilt may be drawn from mere possession of several recently stolen items, a citizen should *never* buy two or more so-called "functionally unrelated" items from a single individual. A purchaser of such items, should he later find they are stolen, may be held, under the majority opinion, to answer for felony charges. Although the risk that the items will turn out to be stolen may be remote, the jeopardy should this unlikely event occur is so great that any prudent person should in no event ever purchase more than a single item from any private individual. Such a restriction, although concededly indirect, on individual conduct in a trading society like ours is not justified by the need to apprehend thieves and traffickers in stolen goods.

In summary, in order to give meaning to simultaneous possession of practically all of the items stolen, as the majority purport to do, it is essential to characterize them as function-

---

[2] Even producing a seller who would waive his privilege against self-incrimination and state that he told the buyer the goods were not stolen would not defeat the inference indulged by the majority because the inference is based on probable awareness arising from the nature of the goods.

ally unrelated. But to do so misstates the facts. In order to infer the crucial element of guilty knowledge, it is necessary to suggest something suspicious about the sale of packages of automobile accessories fitting a particular make and model car. The majority do so by saying that all private sellers of such packages are probable thieves and by charging with guilty knowledge all purchasers of such packages. The majority's "practical realities" is warranted by neither evidence nor experience and is slanderous to many of the citizens of this state. Furthermore, the rule adopted by the majority today should be rejected because under it the innocent are as likely to suffer as the guilty.

Finally, it should be noted that holding that mere evidence of possession of recently stolen goods is insufficient to warrant holding an accused for trial will not impose an undue burden on prosecuting officials in general or in the present case. They must always secure additional evidence in order to convict. And in the instant case, the majority is willing to assume that additional evidence is necessary to convict. If this is the case, then if the prosecutor has such additional evidence, he can easily present it at a new preliminary hearing; if he does not, at this late date, petitioner is entitled to be released.

I would issue the writ of prohibition.

Petitioner's application for a rehearing was denied November 26, 1969, and the opinion was modified to read as printed above. Peters, J., was of the opinion that the petition should be granted.