Filed 12/5/22 P. v. Superior Court (Ioane) CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049965 |
| Petitioner, | (Santa Clara County Super. Ct. No. C2003222) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent; | |
| TAPAESE TAUTIANA IOANE, | |
| Real Party in Interest. | |

## I. INTRODUCTION

The People petition for a writ of mandate after the trial court granted defendant Tapaese Tautiana Ioane's Penal Code section 995[1] motion to dismiss a first degree burglary count (§ 460, subd. (a)) in the information. The People contend that the court erred because sufficient evidence was presented at the preliminary examination for probable cause to believe that defendant entered the victim's residence, took the keys to the victim's car, and then drove off with the car. Defendant, who was the victim's neighbor, was found later that evening in the car with the keys.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

For reasons that we will explain, we conclude that the trial court erred by dismissing the first degree burglary count. Therefore, we will issue a peremptory writ of mandate as requested by the People.

## II. BACKGROUND

### A. *The Burglary*

On February 24, 2020, the victim's car, a Ford Mustang, was parked in his driveway. He lived with his adult daughter and her husband in a two-story home that had an enclosed back patio or sunroom. The victim and his son-in-law left for work in the morning. The daughter remained at home in an upstairs bedroom with the door closed.

Around noon, the daughter heard noises downstairs. The noises consisted of very loud footsteps "along [the] line" in the house between the house door to the back patio and the house door to the garage. She also heard the opening of the house door to the garage. The noises lasted only one or two minutes. The daughter did not investigate the noises because she assumed her father had come home early from work. She then heard the engine of her father's Mustang start up. The daughter assumed he came home in his work truck and drove off in the Mustang.

The daughter's husband came home about two hours later. The daughter and her husband were downstairs in the kitchen when they noticed a back patio window was wide open. A screen had been removed from the patio window. The door leading from the patio to the house was also open. Nothing was taken from either the house or the back patio. The daughter called her father and discovered that he was still at work and that he had not taken the Mustang. The daughter called the police to report the car stolen, and the victim returned home.

The victim stored the keys for the car in a bowl on a garage workbench. Loose change and small items were also in the bowl, and a variety of other items were on the workbench. The keys were "exposed" in the bowl, but it was not "obvious" that the keys were stored there. After the vehicle was taken, the keys were missing from the bowl.

2

Defendant lived two houses away from the victim. The pair had been friends for about five or six years. The victim worked on vehicles and spent a lot of time in the garage with the garage door open. Defendant came over "often," and the pair would "chit-chat" either in the garage or at the garage door, but never inside the house. The pair last conversed about two or three days before the incident. Aside from defendant, the victim did not have other people in the garage on a regular basis, and it was mostly family in the garage.

Defendant openly admired the victim's Mustang and often stated that he was going to buy it from the victim someday. Defendant had been present in the garage when the victim started the Mustang. The victim could not recall whether defendant was present when the victim obtained the key by the mailbox. The victim never gave defendant permission to drive the car.

The police responded to the victim's house about 2:00 p.m. A police officer processed the back patio for evidence but was unsuccessful in recovering any fingerprints. The officer also canvassed the neighborhood and spoke with a neighbor. The officer did not find any witness who had seen defendant near the victim's house at the time. There was no surveillance footage at the residence or from any of the surrounding residences.

The day before the victim's car was stolen, the police had contact with defendant in connection with a "civil standby." In that regard, defendant had contacted the police to come with him to get belongings from his residence, where he was not permitted to be.

Hours after the theft of the victim's car, around 10:00 p.m., the police initiated a "felony stop" of a vehicle. Defendant, who was in the driver's seat and was the sole occupant of the vehicle, was arrested. He was put in a "WRAP device" and ultimately placed on a "5150 hold" because the police believed he was a danger to himself or to others.

3

The vehicle belonged to the victim. The victim received a call from the police, who indicated that his vehicle was in the parking lot of a restaurant and gas station. None of the victim's personal items were missing from the car. However, there were clothes and "hygiene" items in the car and bags of clothing in the trunk that did not belong to the victim. A backpack in the backseat contained mail and documents belonging to defendant. The keys that the victim normally stored in the bowl in the garage were located "in the vehicle."

**B.** *The Charges*

Defendant was charged with various criminal violations. After a preliminary examination, defendant was held to answer on charges that included first degree burglary (§ 460, subd. (a); count 1). The magistrate explained that "when you take the totality of the evidence presented, I do believe that there's sufficient evidence to issue a holding order as to Count 1, including that . . . the car and keys were found in the possession of the defendant; the defendant's knowledge of the property and with the family. [¶] Again, taking the totality of the evidence presented, I think inferences can be drawn that it was [defendant] who entered the home with the intent to commit a theft."

An information was subsequently filed in July 2021, charging defendant with first degree burglary (§ 460, subd. (a); count 1) and buying, receiving, or withholding a stolen vehicle (§ 496d, subd. (a); count 2). The information also alleged that a person other than an accomplice was present during the commission of the burglary (§ 667.5, subd. (c)(21)), that defendant had suffered a prior strike conviction (§ 1170.12, subd. (b)(1)), and that he had suffered a prior serious felony conviction (§ 667, subd. (a)(1)).

**C.** *Penal Code Section 995 Motion*

Defendant filed a motion pursuant to section 995 to dismiss count 1 for first degree burglary. He argued that there was insufficient evidence he entered the home because there was no video surveillance, fingerprints, or DNA relating to him at the

4

home. Defendant also contended that there was no evidence that he knew where the keys to the vehicle were located or that he was the only one who had previously been permitted to enter the garage. The People opposed the motion.

Defendant's section 995 motion was heard on March 22, 2022. The trial court granted the motion to dismiss the first degree burglary count. The court indicated that there was insufficient evidence that defendant knew the keys were in the bowl in the garage, and therefore it was conjecture whether defendant had entered the home with the intent to commit the theft.

## D. *Writ Proceedings*

The People filed the instant petition for writ of mandate seeking to reinstate the first degree burglary count.[2] The People contend that the trial court erred in dismissing the count because the evidence produced at the preliminary examination established probable cause to believe that defendant committed the burglary. The People also requested a stay of the proceedings. We granted the stay request, requested opposition, and ultimately issued an order directing the trial court to show cause why a peremptory writ should not issue to reinstate the count.

## III. DISCUSSION

### A. *Standard of Review*

"Penal Code section 995 allows a defendant to challenge an information based on the sufficiency of the record made before the magistrate at the preliminary hearing. [Citation.] In reviewing the [grant] of a Penal Code section 995 motion to set aside an information, we 'in effect disregard[] the ruling of the superior court and directly review[] the determination of the magistrate holding the defendant to answer.' [Citations.] . . . Insofar as [the section 995 motion] rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information

---

[2] The People also filed a notice of appeal from the order dismissing the first degree burglary count.

5

[citations] and decide whether there is probable cause to hold the defendants to answer." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071-1072.)

In determining whether there is probable cause, "we ask only 'whether the evidence is such that "a reasonable person could harbor a strong suspicion of the defendant's guilt." ' [Citation.] This is an 'exceedingly low' standard [citation] . . . ." (*People v. Superior Court* (*Sahlolbei*) (2017) 3 Cal.5th 230, 245 (*Sahlolbei*).) " ' " 'Reasonable and probable cause' may exist although there may be some room for doubt." ' [Citations.]" (*People v. Mower* (2002) 28 Cal.4th 457, 473.) Significantly, " '[e]vidence that will justify a prosecution need not be sufficient to support a conviction.' ([Citation]; see *People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1226 ['[A]n indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged'].) 'We will not set aside an information "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." ' [Citations.]" (*People v. Scully* (2021) 11 Cal.5th 542, 582.) However, we may not rely on " 'inferences which derive their substance from guesswork, speculation, or conjecture [citations].' [Citation.]" (*Wooddall v. Superior Court* (1986) 185 Cal.App.3d 399, 401.) "Finally, although there must be *some* showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate. [Citation.]" (*Williams v. Superior Court of Los Angeles County* (1969) 71 Cal.2d 1144, 1148 (*Williams*).)

**B.** *Analysis*

In charging defendant with first degree burglary, the prosecutor in this case alleged that defendant entered the victim's house with the intent to commit theft. The evidence at the preliminary examination established that someone entered the victim's house, took the car keys from the garage, and then drove the vehicle away from the

6

driveway without the victim's consent. The question in this case is therefore "whether that evidence . . . discloses circumstances from which the magistrate could reasonably have inferred that *defendant* was the thief . . . ." (*Williams*, *supra*, 71 Cal.2d at p. 1149.)

In holding defendant to answer for first degree burglary (§ 460, subd. (a); count 1), the magistrate explained that "when you take the totality of the evidence presented, I do believe that there's sufficient evidence to issue a holding order as to Count 1, including that . . . the car and keys were found in the possession of the defendant; the defendant's knowledge of the property and with the family. [¶] Again, taking the totality of the evidence presented, I think inferences can be drawn that it was [defendant] who entered the home with the intent to commit a theft."

"It has long been settled in this state that evidence of mere possession of stolen property is not sufficient in and of itself to *sustain a conviction* for grand theft [citations], . . . and that the conviction will not be sustained unless there is, in addition to evidence of possession, some evidence worthy of consideration tending to show that such possession was obtained by unlawful means." (*Williams*, *supra*, 71 Cal.2d at p. 1149.) In contrast, however, "[t]he evidence to support an indictment or information need not be sufficient to support a conviction [citation] and accordingly to 'warrant the denial of a motion under section 995 of the Penal Code, it is not necessary that the proof be so complete as to justify a conviction of the accused.' [Citation.]" (*Id.* at p. 1150.)

In this case, without deciding whether the evidence presented at the preliminary examination would support a *conviction* for burglary or theft, we determine that the evidence was sufficient *to hold defendant to answer*.

A defendant's possession of a recently stolen vehicle may be circumstantial evidence that the defendant intended to deprive the owner of the vehicle. (*People v. Najera* (2008) 43 Cal.4th 1132, 1138.) Such evidence, however, does not "eliminate the possibility of an innocent explanation for defendant's presence behind the wheel of a car he did not own." (*Ibid.*) For example, " ' "[t]he real criminal . . . may have artfully

7

placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight, and found by the possessor, or have been taken from him in order to restore it to the true owner, or otherwise have come lawfully into his possession." ' [Citations.]" (*Ibid.*)

In this case, there was additional evidence beyond defendant's mere possession of the vehicle after the burglary and the taking of the vehicle.

First, defendant and the victim knew each other, having lived only two doors away from each other.

Second, defendant had previously expressed admiration for the victim's car and had indicated that he wanted to obtain the car from the victim (although by purchasing it).

Third, only one day prior to the vehicle being taken, defendant had removed his belongings from his own residence where he apparently was no longer permitted to reside. The next day, only hours after the victim's car was taken, he was found in the car with documents belonging to him, "hygiene" items, and bags of clothing.

Fourth, at the time of the burglary, the victim's daughter reported hearing footsteps "along [the] line" in the house between the house door to the back patio and the house door to the garage. She also heard the opening of the house door to the garage. The noises lasted only one or two minutes, and nothing was taken from inside the house. The location of the footsteps in the house, the short period of time that the burglar was in the house, and the fact that only the car keys and car were taken, raises an inference that the burglar was there for the sole purpose of getting into the garage, taking the car keys, and then taking the car.

Fifth, defendant had been in the garage previously with the victim, including when the victim had started the car's engine. Although the victim was not sure whether defendant had seen the victim remove the car keys from the bowl in the garage, the victim also indicated that it was not "obvious" that the keys were stored there. The burglar, however, was apparently able to locate the keys relatively quickly. Aside from

8

defendant and the victim's family, no one else was regularly in the garage, which limited the number of people likely to know about the location of the car keys. Significantly, defendant was found in possession of the car and the keys later that same evening.

Given the totality of the evidence presented at the preliminary examination, "it can reasonably be inferred that the possessor [defendant] is either identical with or knowingly stands in close proximity with the thief. In short, absent such close involvement of the possessor one finds it difficult to infer" an innocent explanation for defendant's possession of the vehicle "within a relatively short time thereafter." (*Williams*, *supra*, 71 Cal.2d at pp. 1150-1151.) We therefore conclude, based on the evidence at the preliminary examination, that " ' "a reasonable person could harbor a strong suspicion" ' " (*Sahlolbei*, *supra*, 3 Cal.5th at p. 245) that defendant committed the burglary of the victim's residence.

Defendant contends that there is "no direct evidence" that he was present during or participated in a residential burglary. Direct evidence, however, is not required. A sufficient "showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate. [Citation.]" (*Williams*, *supra*, 71 Cal.2d at p. 1148.)

Next, defendant argues that two of the magistrate's findings—that defendant was in possession of the vehicle's keys and that he had knowledge of the property and the family—are unsupported by the record, and that a third finding—that he was in possession of the vehicle—is insufficient to prove a theft offense.

We are not persuaded by defendant's arguments. First, defendant was by himself in the driver's seat of the car when the police conducted a "felony stop," and the keys were inside the car. The magistrate could reasonably conclude that defendant had possession of the keys. Second, defendant was a neighbor who lived two doors away from the victim, the pair had been friends for at least five years, and defendant "often" came over to "chit-chat" either in the garage or at the garage door. Defendant also

9

admired the vehicle and had seen the victim start the vehicle in the garage. From this evidence, the magistrate could reasonably conclude that defendant had knowledge of the property and the family. Lastly, as we have explained, there was additional evidence beyond defendant's possession of the vehicle to support the finding of probable cause. Defendant was therefore properly held to answer on the charge of first degree burglary by the magistrate.

## IV. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting defendant's Penal Code section 995 motion and dismissing count 1 of the information, and to enter a new order denying the motion.

The temporary stay order is vacated.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*People v. Superior Court (Ioane)*
**H049965**