[Crim. No. 6297. Third Dist. Mar. 16, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE FREDRICK SCHENK, Defendant and Appellant.

## Counsel

Brown & Wright and Harold C. Wright for Defendant and Appellant.

Evelle J. Younger, Attorney General, Daniel J. Kremer and Nelson P. Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RICHARDSON, P. J.**—Defendant, having been convicted by a jury of possession of a restricted dangerous drug (barbiturate) (Health & Saf. Code, § 11910), appeals from an order granting him probation and suspending imposition of sentence. On appeal he contends first that a statement taken from him in violation of his *Miranda** rights was impermissibly admitted into evidence against him, and secondly, that the court improperly directed the jury to determine a question of law and improperly instructed it in regard to "usable quantity."

On February 26, 1971, defendant was arrested in a Chico super market for shoplifting. He was fully advised at that time as to his *Miranda* rights and stated that he understood those rights. He then was taken to the city jail for booking. The interval between initial arrest and commencement of the booking process was approximately 20 minutes. During the latter procedure, defendant, upon instructions, emptied the contents of his pocket. Among the items contained therein were two loose, small red pills, subsequently identified as a barbiturate, each pill weighing two-tenths of a gram. Defendant readily admitted ownership of the pills and further admitted that he had no prescription for them and that they were "sleeping pills or downers." He was then placed under arrest for possession of a restricted dangerous drug, and was again admonished as to his *Miranda* rights. A waiver was made and a written statement repeating what he had previously told the booking officer was signed by the defendant. At trial defendant's oral and written statements were introduced.

### The Claimed Miranda Violation

██ Defendant contends that his responses to the questions of the booking officer regarding the pills and the written statement embodying those responses were unlawfully admitted, his principal claim being that although

---

*Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

there was a full *Miranda* admonition at the time of the initial arrest on the shoplifting charge, approximately one-half hour elapsed before discovery was made of the barbiturates. Defendant contends that the admonition given at the time of the original arrest does not carry over so as to permit police interrogation in regard to the subsequent felony charge. He contends further that a new and separate *Miranda* warning is required when an accused is subjected to questioning designed or liable to elicit incriminatory statements referable to an offense other than the one connected with the original admonition, and that the observation by the booking officer of possible contraband terminated the routine booking process and transformed it into a custodial interrogation in regard to the suspected commission of the felony beyond the investigatory phase permitting such interrogation.

The trial court held that the challenged evidence was admissible as obtained not in the process of a custodial interrogation but in the context of routine booking procedures.

The issue then is whether a new *Miranda* warning must precede any questions relating to a crime of which a defendant is suspected if it is distinct from the crime in regard to which his rights have previously been enunciated. While acknowledging that under a different factual context new warning may be required where substantial intervals of time occur between the initial warning and the succeeding interrogation, and that further and more adequate *Miranda* instructions may be required where the original instructions are deficient, we hold that a repeated and continued *Miranda* warning need not precede every twist and turn in the investigatory phase of the criminal proceedings. Rather, as was stated in *People* v. *Brockman* (1969) 2 Cal.App.3d 1002, 1006 [83 Cal.Rptr. 70], "The determination, in each case, is whether the *Miranda* warning sufficiently informs a defendant of his constitutional rights so that he has an understanding of these rights during subsequent interrogations. [Citation.]" If the record reflects that the defendant comprehended during subsequent interrogation the precedent *Miranda* warning, the requirements of *Miranda* have been satisfied. We note in the instant case that the time lapse between initial booking and subsequent interrogation was 20 minutes to half an hour, and we conclude that the circumstances of the instant case show a defendant who reasonably understood and fully comprehended his *Miranda* rights during the booking procedure.

### The Jury Instruction on the Issue of "Usable Quantity"

 Defendant contends that in order to convict it was necessary for the jury to determine that the pills in question contained a quantity of barbiturate sufficient to produce a drug effect upon defendant, and accordingly that the

prosecution's failure to produce any evidence of the amount of barbiturate present in each two-tenths of a gram pill required a directed verdict in defendant's favor. He bases his contention upon *People* v. *Leal* (1966) 64 Cal.2d 504, 512 [50 Cal.Rptr. 777, 413 P.2d 665], as interpreted in *People* v. *Johnson* (1970) 5 Cal.App.3d 844, 848-849 [85 Cal.Rptr. 238]. The prosecution claims, however, that it was sufficient for the jury to find that the barbiturate was present in a form suitable for ingestion in the manner such preparation is normally intended for use as a drug or narcotic, and that accordingly no quantitative breakdown of the constituent parts of the pills need be offered. The court denied defendant's motion for a directed verdict of acquittal under section 1118.1 of the Penal Code but did not advise the jury that such interpretation was controlling and permitted counsel to argue their conflicting theories on "usable quantity" to the jury. The court instructed the jury on this issue, using the following language from CALJIC No. 12.20 (3d ed.): "To constitute the illegal possession of a restricted dangerous drug, it must be established: [among other things] . . . 4. That the substance *was in an amount sufficient to be used as a drug*." (Italics added.)

Defendant submitted an additional instruction relating to the issue covered by the fourth subdivision of CALJIC No. 12.20 (3d ed.) in the following words: "You must further find that Mr. Schenk possessed a restricted dangerous drug in a usable quantity. That is, you may not find Mr. Schenk guilty of possessing a drug, so limited in quantity or so altered in form as to be useless for drug purposes." This instruction was rejected.

It is argued that *Leal* and *Johnson* require as a necessary element for conviction of the crime charged that the quantity of the drug involved be sufficient to produce a drug effect upon defendant. In *Leal* the Supreme Court, after carefully reviewing the varying degrees of quantity and residue presented in a series of appellate cases, concluded that "in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption, as *Sullivan* [*People* v. *Sullivan*, 234 Cal.App.2d 562 (44 Cal.Rptr. 524)] points out, does not constitute sufficient evidence in itself to sustain a conviction." (*People* v. *Leal, supra*, 64 Cal.2d at p. 512; see also *People* v. *McCarthy*, 64 Cal.2d 513, 514 [50 Cal.Rptr. 783, 413 P.2d 671].) In *Johnson*, on evidence that was uncertain as to the nature or extent of the amphetamine content of the pill in question, the appellate court disapproved the trial court's instructions in the form of CALJIC No. 701 and No. 701-A for the reason that the phrase "in an amount sufficient to be used as a narcotic" was deleted from the in-

struction given.[1] This fact, coupled with the trial court's failure to give any instruction that a necessary element for conviction was that the jury find defendant "possessed and/or transported a *usable* quantity" of the drug, caused the *Johnson* court to reverse.

Certain language in *Johnson* is subject to inference that one necessary ingredient of the crime of possession is that the quantity in question must be "usable" in the sense that it be capable of producing a drug effect on the user. The same court, however, within a year and a half after *Johnson,* in *People* v. *Pohle* (1971) 20 Cal.App.3d 78, 81 [97 Cal.Rptr. 364], cast doubts on any such interpretation when, presented with a marijuana conviction, it rejected appellant's assertion that the prosecution was required to establish possession of the contraband in a usable quantity, defined as sufficient to produce a narcotic effect. The court's refusal to accept such an argument was couched in the following language (at p. 82): "Such a theory could logically be extended to permit evidence that while contraband contained an amount of narcotic sufficient to produce its effect upon one person, its content was not great enough to produce such effect upon a defendant with higher tolerance to the drug in question." Accordingly, the import of *Johnson,* insofar as it bears upon the issue of the resultant effect on the .user as a measure of "usable quantity" is substantially inhibited by *Pohle*.

Finally, in *People* v. *Harris* (1971) 15 Cal.App.3d 498, 501-502 [93 Cal.Rptr. 285] (hg. den.) the issue herein presented was resolved adversely to defendant. Harris was convicted of possession of heroin. He claimed error in failure to give an instruction as follows (p. 501): " 'The prosecution has the burden of proving beyond a reasonable doubt that the substance in evidence was not only a narcotic but that it was usable as such either for sale or consumption.' " The trial court instead instructed the jury with subsequent appellate approval that " 'Every person who possesses any narcotic such as heroin, *in an amount sufficient to be used as a narcotic,* is guilty of a crime . . . .' " (P. 502.) Such an instruction, basically indistinguishable from that given herein, was found proper and sufficient when accompanied, as here, by the usual instruction on reasonable doubt. We reject the contention that the crime of possession of a restricted dangerous

---

[1]CALJIC No. 701 (Rev.): "It is unlawful for any person to have in his possession, conceal, transport, carry, convey, sell, furnish, administer or give away, or offer to conceal, transport, carry, convey, sell, furnish, administer or give away, or attempt to conceal, transport, carry, or convey a narcotic."

CALJIC No. 701-A (Rev.): "Every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer or give away, or attempts to import into this State or transport any narcotic, in an amount sufficient to be used as a narcotic, is guilty of a crime."

drug requires that the quantity of the drug be sufficient to produce a drug effect.

The judgment is affirmed.

Janes, J., and Taylor, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1972.

---

*Assigned by the Chairman of the Judicial Council.