THE STATE OF OHIO, APPELLEE, *v.* GALLAGHER, APPELLANT.

(No. 4158—Decided May 30, 1973.)

APPEAL: Court of Appeals for Montgomery County.

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Randal A. Anderson, Jr.,* for appellee.
*Mr. Jack T. Schwarz,* for appellant.

SHERER, J. Defendant, the appellant herein, is appealing from a conviction of the armed robbery of a Xenia Avenue 7-11 Store on or about May 27, 1972. He was tried without a jury and sentenced for from ten to twenty-five years in the Ohio State Penitentiary.

Defendant claims as assignments of error the refusal of the trial judge to suppress the statement defendant made to his parole officer, William Sykes, and the judge's failure to direct a verdict in favor of defendant at the end of the State's case.

The record shows that on or about the afternoon of May 27, 1972, Alex Dean, an employee of the 7-11 Store, was robbed at gunpoint of approximately $350 by two young men. He testified that while the two men stood within arm's length of each other, defendant's accomplice held the gun, did all the talking, and received the money. The two men then left the store together.

Although there were two female adults who were in the store at the time and corroborated Mr. Dean's account of the robbery, only Mr. Dean was able to later identify defendant as one of the robbers, which he did from a group of photographs shown to him by the Dayton police.

At the trial of this cause, William Sykes, a parole officer assigned to defendant when he was released from prison on a previous conviction, was permitted to testify, over objection, that he conversed with defendant on two separate occasions while defendant was incarcerated after his arrest on the present charge. The first conversation occurred on June 26, 1972, at which time defendant told Mr. Sykes he did not wish to discuss the incident. Mr. Sykes testified that at the second meeting, on July 3, 1972, defendant admitted to him that he went to the 7-11 Store on the day in question with the man who robbed the store, that he had a weapon, that he was prepared to use it, and that he and the robber acted in concert. Mr. Sykes further testified that he at no time advised defendant of his rights to remain silent, to have an attorney present, and that anything he said could be used against him.

It is the trial court's admission of Mr. Sykes' testimony, which is averred to be a violation of the constitutional requirements of *Miranda* v. *Arizona* (1966), 384 U. S. 436, that defendant raises as his first assignment of error.

The issue of whether a parole or probation officer is a "law enforcement officer" within the contemplation of *Miranda* and thus subject to the *Miranda* requirements of constitutional warnings to suspects during custodial interrogation has not yet been decided in Ohio. But a review of cases in other jurisdictions reveals that decisions have gone both ways.

In *State* v. *Lekas* (1968), 201 Kan. 579, 442 P. 2d 11, the Supreme Court of Kansas held that officers of the Kansas state board of probation and parole are required to comply with the mandates of *Miranda* if, while investigating a fresh felony by a parolee, they elicit incriminating statements later admitted into evidence in the prosecution of that new offense. In *Lekas* and two cases which concur

with it, *State* v. *Williams* (Mo. Sup. Ct. 1972), 486 S. W. 2d 468, and *People* v. *Gastelum* (1965), 237 Cal. App. 2d 205, 46 Cal. Rptr. 743, the defendant had not been given the full *Miranda* warnings at any time previous to the questioning by the parole officer.

In *State* v. *Johnson* (1972), 202 N. W. 2d 132, the South Dakota Supreme Court held differently by distinguishing a parole or probation officer from the "law enforcement officer" envisioned in *Miranda,* stating at page 133, 134:

"It is the duty of a law enforcement officer to detect crime and enforce the criminal laws of the state. * * * The duty of a probation officer is the antithesis of this. His duty begins when the peace officer's duty ends. He does not have a peace officer's broad power of arrest. He has only the limited authority to take and detain a probationer when the terms of the suspension or probation have not been observed or when it is necessary to prevent escape or enforce discipline. * * * Otherwise he has supervisory powers only to help in the reformation and rehabilitation of convicted persons on probation, parole, or suspended sentences."

In *People* v. *Ronald W.* (1969), 24 N. Y. 2d 732, 734, 302 N. Y. S. 2d 260, 262, the Court of Appeals of New York remarked:

"The clearly stated objectives of education and rehabilitation which are always paramount in the relationship between the probation officer and the probationer * * * are totally foreign to the elements the Supreme Court addressed itself to in *Miranda.*

"* * * *

"It is true that a probation officer is a 'peace officer' * * * but, certainly, he is not a 'law enforcement' officer within the spirit or meaning of *Miranda* v. *Arizona* * * *."

*Gilmore* v. *People* (1970), 171 Colo. 358, 467 P. 2d 828, involved statements made by a defendant to his federal probation officer. The defendant had been given the *Miranda* warnings by the police and he denied everything they charged him with. He then admitted the offense to the probation officer. The trial court held that the defendant was adequately warned of his *Miranda* rights by the police

and that any statements he made subsequently to anyone else were made voluntarily.

In *Nettles* v. *State* (Fla. App. 1971), 248 So. 2d 259, the court held admissible in evidence a defendant's admission to his probation officer who failed to give him the *Miranda* warnings. As in the case now before us, the defendant had signed a waiver of his *Miranda* rights six days before he made the statement to the probation officer. The Florida court analogized probation to being in constructive custody whereby the probationer agreed to abide by certain rules and restrictions as conditions for probation. The court went on to state that the probationer waived his constitutional *Miranda* rights when he accepted probation and this waiver continued in effect even on a new and fresh crime, insofar as the probation officer is concerned:

"We do not hold that he had waived his *Miranda* rights in all circumstances but as to his probation officer the waiver was in continuing effect during the term of his probation and he was not entitled to *Miranda* warnings.

"* * * [I]f upon every visit or contact with the probation officer the probationer is entitled to a warning then the relationship between the probation officer and the probationer would be a strained one indeed and the purpose of probation would be materially affected." 248 So. 2d at 260.

We feel compelled, by the facts of the instant case, to follow the majority decisions in other jurisdictions and agree with the trial court that the statements Mr. Gallagher made to his parole officer are admissible in evidence against him. The record shows that defendant was fully advised of his *Miranda* rights by the Dayton Police on June 22, 1972, shortly after his arrest, and he signed the standard pre-interview form that lists all his rights, thereby agreeing that any statements he made thereafter were of his own free will. The law is established that there is no requirement to repeat these warnings during subsequent questioning, even if several weeks elapse and further questioning is conducted by other persons. *Gorman* v. *U. S.* (C. C. A. 1, 1967), 380 F. 2d 158, 164, *Maguire* v. *United States*

(C. C. A. 9, 1968), 396 F. 2d 327, cert. denied, 393 U. S. 1099.

Mr. Sykes testified that he visited defendant initially on June 26, 1972. He stated:

"It's part of my job when one of my fellows gets arrested, I'm to interview him and see what his circumstances are."

At that time, defendant said that he did not wish to make any statement in regard to the circumstances surrounding the arrest. Mr. Sykes saw defendant again on July 3, 1972, again at his own discretion, as "part of my job," and elicited the admissions concerning the armed robbery in question.

This court is of the opinion that Mr. Sykes on both visits was merely carrying out his duty as a parole officer to investigate any violations of the law committed by his parolee. This is not done solely to elicit confessions that can later be used against the parolee at trial, but merely to aid in the rehabilitation of the parolee. There is no indication in the record that Mr. Sykes acted jointly with the police, at their instigation, or as an agent or tool of the police. Nor does the testimony of Appellant at trial indicate otherwise. Appellant stated that he was not forced to talk with Mr. Sykes in the jail, that he knew he did not have to talk with him, and that everything he said was said voluntarily.

Appellant also contends that the relationship of parole officer and parolee is a privileged one, that all communications between the two are thereby confidential, and that to hold otherwise would undermine the rehabilitation process envisioned by the parole system. While we agree that a beneficial relationship between the parole officer and his charge depends upon mutual trust and confidence, we are unable to agree that communications between the two fall within the class of inadmissible privileged communications such as those of attorney-client, husband-wife, physician-patient, or priest-penitant. A parolee is advised of the restrictions and conditions of his parole, that he can lose his parole status if he violates those precepts, and that his parole officer has the power to arrest him for transgressions.

Under these circumstances then, we cannot hold that defendant's admissions to Mr. Sykes were privileged, regardless of what defendant may have thought at the time.

Defendant's first assignment of error will therefore be overruled.

Defendant contends as his second assignment that the trial court erred to his prejudice in overruling his motion to dismiss the action at the close of the prosecution's case. He claims that his statements to Mr. Sykes were inadmissible and that without those statements there was insufficient evidence with which to convict him. Since this supposed error relies on the exclusion of Appellant's statements as to the crime in question, and having already ruled that such statements are admissible, we must overrule defendant's second assignment of error. It is clear from a review of the record as a whole that there was ample evidence to sustain the court's verdict of guilty.

Having found no error in the record prejudicial to defendant, the judgment of the common pleas court will be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and KERNS, J., concur.