SHARP, Judge,
dissenting.
I think this case should be reversed because Pressley was not read her Miranda rights[1] prior to the commencement of an interview at the police station on March 10th when, after two and one-half hours of interrogation, she made a confession. It was the sole direct evidence linking her to the homicide in this case. Accordingly, the confession should have been suppressed and its admission at trial was reversible error. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Brewer v. State, 386 So.2d 232 (Fla.1980).
Rodney, a two month old infant, was found dead in his crib due to a blow to his head.[2] Pressley was his primary caretak *909 er, but his father and a neighbor were also involved in his care; and his siblings, age three and five, were also sharing his living quarters.
Pressley and others went to the police station on March 7, 1982, to give statements. She was read the Miranda rights and she signed a written waiver prior to being questioned. She denied any knowledge about how Rodney was injured.
Two detectives who were investigating the case telephoned Pressley and asked her to come by the police station to clarify her earlier statement. She voluntarily went to the police station at 9:00 a.m. on March 10, 1982. There she was placed in a small interrogation room with the two detectives.
After viewing the videotaped interview of March 10th, I must conclude it was clearly accusatory and custodial, and was the kind of police interrogation for which a Miranda warning is required. The detectives repeatedly told Pressley that she could not leave until she told them the truth about what happened to Rodney, and that they were prepared to stay there all day. One detective also said a number of times that either she or her husband had killed Rodney. Pressley testified that she felt she was not free to leave about halfway through the interview. It took place in a small room at the police station. Pressley sat across a table from the two detectives and the door was closed.
The detectives used tactics during the interview process which courts have taken exception to, and which should not be condoned. One detective purported to sympathize with Pressley. He said he fully understood the pressures she was living under: a tiny apartment; four young children; a husband rarely home; not enough money. He even shed tears and used her handkerchief. He urged Pressley to tell the truth so that he could help her.
The other detective fired questions at her, and made some untrue statements about the condition of her other children and what other witnesses had said about her. Both detectives inferred she would lose custody of her other children and would not be allowed to see them unless she talked. Pressley testified that after two and one-half hours of questioning, she thought that if she made a confession they would get help for her and would allow her to go home. She began to weep.
Finally, Pressley confessed to having inadvertently caused Rodney’s injuries. At that point, the detectives read her the Miranda warnings and got her to sign a written waiver. Shortly thereafter, they prepared a written confession based on her oral statements, which she signed. One detective typed the question, and another wrote Pressley’s one or two word response, which she then initialed. The written confession was later admitted into evidence at her jury trial.
The trial judge, who also saw the videotaped interview, ruled that the written confession was admissible even though no Miranda warnings were given at the commencement of the interrogation. He reasoned that Pressley had come to the police station voluntarily and that since she was not in custody, no warnings were required. He also ruled that although he disapproved of some of the police procedures demonstrated on the tape and the language they used, he did not find their questioning so coercive as to make Pressley’s confession involuntary. U.S. CONST, amend. V.
Whether a confession or statement is involuntary because it was obtained in violation of a person’s fifth amendment rights[3] is generally a question of fact for the determination of the trial judge in Florida. Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); Wiley v. State, 427 So.2d 283 (Fla. 1st DCA 1983); Porter v. State, 410 So.2d 164 (Fla. 3rd DCA 1982). The trial judge who hears testimony at the motion to suppress has broad discretion in *910 this regard. Although that is a close question here, given the tactics used by the police in this case,[4] I would defer in this case to the correctness of the trial court’s ruling. DeConingh v. State, 433 So.2d 501 (Fla.1983), cert. denied, — U.S. -, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981); Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980).
However, I cannot agree with the trial court that the two and one-half hour interview of Pressley was not one for which Miranda warnings were not needed. Such warnings must be given regardless of whether a suspect is in custody when the focus of the police investigation has centered on the accused.[5] Here it had, and Pressley believed (with good reason) that her freedom to exit the interrogation room had been taken from her. Miranda defines custodial interrogation as “questions initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” 384 U.S. at 452, 86 S.Ct. at 1616.
If Miranda warnings should be given, they must be given prior to any questioning, and not two and one-half hours into the process.[6] The timeliness of the warnings may be as important as the warnings themselves.[7] If Miranda warnings are given too late in the interrogation process, a confession made by an accused will be inadmissible. Turner v. State, 314 So.2d 183 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 21 (Fla.1976). I think the fact that Pressley was given Miranda warnings after she orally confessed but before signing her written confession, under the circumstances in this case, should not save the written confession from having been unlawfully obtained.
After this case was under consideration by our court, the United States Supreme Court released its opinion in Oregon v. Elstad, — U.S. -, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Elstad holds that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.
In my view, this is a retrenchment from the prior law regarding procedural safeguards a suspect must be accorded, but the Elstad majority applied the new principles to all cases without reservation. Elstad clearly applies to this case, however far it has progressed in the appeal process.
Initially, I thought Elstad was disposi-tive of this case, and that I should concur specially with an affirmance on its authority. However, upon a closer reading, it is clear that Elstad does not purport to lay down a rigid rule of law. Justice O’Connor stressed the fact in Elstad that the suspect made an admission minutes after a police officer began questioning him in his living room, and his mother was nearby in the kitchen. She pointed out that the environment and manner of questioning was not “coercive” or lengthy.
Elstad was then transported to the police station, and sometime later he was asked if he wanted to make a statement, after being given Miranda warnings. He replied that he did, and he made a fully detailed confession, volunteering new and different matters beyond the scope of his initial, unwarned statement. Justice O’Connor noted the fact that adequate time had intervened between the unwarned statement and the warned confession, and that they were not necessarily related to one another.
*911 In this case, very little time elapsed between the unwarned oral statements and the warned written confession. The interview process was lengthy and coercive. And the written confession cannot be viewed fairly as anything but the product of the oral statements, given the fact that the detectives drafted it based on Press-ley’s oral confession.[8]
It seems to me that Justice O’Connor was fearful that just this result would occur if the rule in Elstad were applied rigidly. In an effort to limit Elstad she stressed that the later warned confession should not be admissible if the first unwarned one was obtained by physical violence, coercion, or “other deliberate means calculated to break the suspect’s will,” or if there was a causal connection between the unwarned admission and the confession:
We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. (Emphasis supplied).
105 S.Ct. at 1296. Since in this case the unwarned statements were obtained in a coercive manner, and the written confession was an immediate product of those statements, I think under Elstad the written confession should have been excluded.
Another difficult question in this case is whether the fact that the police read Press-ley the Miranda warnings on March 7th saves, as a matter of law, her confession that was given on March 10th without the Miranda warnings having been timely given. Many cases have held that it is not necessary to repeat the Miranda warnings each time a suspect is interrogated. But most of these cases involve renewed questioning within hours, not days, after the warnings were given. See United States ex rel. Henne v. Fike, 563 F.2d 809 (7th Cir.1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978) (nine hours); Miller v. United States, 396 F.2d 492 (8th Cir.1968), cert. denied, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969) (a thirty minute break); People v. Schenk, 24 Cal.App.3d 233, 101 Cal.Rptr. 75, (1972) (thirty minutes); Hall v. State, 440 So.2d 689 (Fla. 1st DCA 1983) (one hour twenty minutes); State v. Williams, 386 So.2d 27 (Fla. 2d DCA 1980) (a few hours); De Luca v. State, 384 So.2d 212 (Fla. 4th DCA), rev. denied, 389 So.2d 1108 (Fla.1980) (less than twenty-four hours); Franklin v. State, 324 So.2d 187 (Fla. 1st DCA 1975) (twenty minutes); Commonwealth v. Abrams, 443 Pa. 295, 278 A.2d 902 (1971) (eight hours).
Where a number of days have passed since the initial Miranda warnings were given, new warnings may be required unless the suspect acknowledges that he or she remembers the prior warnings and their significance.[9] At least the suspect should be reminded of the initial Miranda warning prior to commencing anew the interrogation process after a lapse of a significant period of time. See Franklin.
The basic point of inquiry in such a case should be whether the suspect remembers the prior warnings and their significance, prior to the renewal of questioning. In this case there was no suggestion or reminder by the police of the Miranda warnings given to Pressley three days previously. The only testimony given on this issue at the motion to suppress was that Pressley in fact did not remember the first warnings or their significance.
*912 The state has the burden to establish such warnings were timely given. Wiley; Williams v. State, 403 So.2d 453 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 471 (Fla.1982); Brewer. Accordingly, I must conclude that Pressley was unaware of her constitutional right to remain silent at the second interview on March 10th. Her written confession following immediately after her oral one, which was obtained under coercive circumstances, was therefore inadmissible. Elstad; Miranda.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. He was clearly an abused child. His sufferings during his short life were extensive. The medical testimony established that at the time he died he was malnourished, had partially healed broken ribs and limbs, and had bites and bruises on his body. Why some neighbor, grandparent, or person observing him in the emergency room at the other times for treatment prior to his death did not intervene and *909 try to save him is a tragedy too common in such cases.

. U.S. CONST, amend. V; Art. I, § 9, Fla. Const.; Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

. See Miranda; Ware v. State, 307 So.2d 255 (Fla. 4th DCA), cert. denied, 316 So.2d 286 (Fla.1975).

. Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); United States v. Phelps, 443 F.2d 246 (5th Cir.1971).

. Miranda, 384 U.S. at 492, 86 S.Ct. at 1637; Westover v. United States, 384 U.S. 436, 496, 86 S.Ct. 1602, 1639, 16 L.Ed.2d 694 (1966).

. Tucker v. United States, 375 F.2d 363 (8th Cir.), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967).

. Ironically, Detective Swartz agreed at trial that the written confession was a "product” of the two and one-half hours of interview and interrogation. Of course, neither he nor the trial court had the benefit of Oregon v. Elstad, — U.S. -, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) at that point. This is precisely the practice decried in Justice Brennan’s dissent in Elstad, 105 S.Ct. at 1298, (Brennan, J., dissenting).

. See Biddy v. Diamond, 516 F.2d 118 (5th Cir.1975), cert. denied 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976); People v. Schenk, 24 Cal.App.3d 233, 101 Cal.Rptr. 75, (Cal.Ct.App.1972); Nettles v. State, 248 So.2d 259 (Fla. 2d DCA 1971); but see Maguire v. United States, 396 F.2d 327 (9th Cir.1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969); State v. Gallagher, 36 Ohio App.2d 29, 301 N.E.2d 888 (1973), reinstated, 46 Ohio St.2d 225, 348 N.E.2d 336 (1976).